354 So.2d 1022 (1978)
Claims of James D. PARKER et al.
v.
Joseph R. GERACE et al.
Claims of Sherman BRUMFIELD et al.
v.
Joseph R. GERACE et al.
Claims of Joseph BAGENT et al.
v.
Joseph R. GERACE et al.
No. 60203.
Supreme Court of Louisiana.
January 30, 1978.
*1023 Louis L. Robein, Jr., Jerry L. Gardner, Jr., Dodd, Barker, Boudreaux, Lamy & Gardner, New Orleans, for plaintiffs-applicants.
James A. Piper, James A. McGraw, Baton Rouge, E. B. Dittmer, II, Talley, Anthony, Hughes & Knight, Bogalusa, for defendants-respondents.
CALOGERO, Justice.
Under the collective bargaining agreement between Locals 189 and 1362 of United Paperworkers International Union and Crown Zellerbach Corporation, plaintiff-relators, who are employees of Crown Zellerbach at its Bogalusa, Louisiana paper mill, are paid for certain designated "holidays," notwithstanding they are generally off work on those days.
Shortly before Christmas of 1974 claimants were placed on lay-off status, that is, they were temporarily laid off because of curtailment of production at the mill. They apparently remained out of work for several weeks during which time they applied for unemployment compensation. Under the law they are entitled to that compensation if they meet certain requirements, including that they be "unemployed." The act provides that "Any individual shall be deemed to be `unemployed' in any week during which he performs no services and with respect to which no wages are payable to him . . . ." R.S. 23:1472(19).
During the lay-off period, however, claimants had received holiday pay as provided for in the collective bargaining agreement for December 24th, 25th and 26th. For each of these three days they received eight hours pay at their respective straight time rates.
*1024 Apparently because payment of unemployment compensation claims affects the employer's experience rating and may contribute to precluding a reduction in the company's payroll tax,[1] the company opposed the applications. It contended that applicants had received holiday pay for the 24th, 25th and 26th of December and were thus not entitled to unemployment compensation for the week ending December 28, 1974.
Claimants prevailed in two of the three cases before the agency (actually an appeals referee for the Department of Employment Security), lost before the Board of Review, succeeded in the Twenty-Second Judicial District Court for the Parish of Washington, and lost again in the Court of Appeal. Parker v. Gerace, 346 So.2d 853 (La.App. 1st Cir. 1977).
We granted writs on application of claimants to review that decision of the Court of Appeal, and to consider whether under the appropriate statutes claimants were "unemployed" during the week ending December 28, 1974.[2] 349 So.2d 333 (La.1977).
Louisiana Revised Statute 23:1472, briefly alluded to above, defines unemployment and wages as follows:
"(19) `Unemployment'Any individual shall be deemed to be `unemployed' in any week during which he performs no services and with respect to which no wages are payable to him, or in any week of less than full-time work if the wages payable to him with respect to such week are less than his weekly benefit amount.
"(20)(A) `Wages' means all remuneration for services, including commissions and bonuses and the cash value of all remuneration in any medium other than cash." [emphasis here and elsewhere added]
Louisiana Revised Statute 23:1593 provides in pertinent part:
"An eligible individual who is employed in any week shall be paid with respect to such week a benefit equal to his weekly benefit amount less that part of his wages, if any, payable to him with respect to such week in excess of fifty percent of his current weekly benefit amount."
The Local 189-Crown Zellerbach contract provides:
"For each recognized holiday an eligible employee shall receive eight (8) hours' pay at the straight time rate of the job on which he worked on his last working day before the holiday. If such employee works on the holiday, he shall receive additional compensation as provided in Section XIV`Overtime'.

"In order to be eligible for holiday pay, an employee must meet all of the following conditions:
"1. He must have been on the payroll of the Company for a period not less than thirty (30) days immediately preceding the holiday.
"2. He must have worked his scheduled work day immediately before and immediately following the holiday unless absent for a justifiable cause.
"3. He must have worked on the holiday if scheduled to work unless absent for justifiable cause.
"An employee will be considered absent for justifiable cause:
"1. If he is on vacation; or,
"2. If he is unable to work because of illness or injury, which must be proven by evidence satisfactory to the Company, and the holiday falls within the first six (6) months of such absence; or,
"3. If he has been excused by his supervisor."
The Section XIV overtime to which the employee who works on the holiday is additionally entitled is time and a half for each hour worked. The Local 1362 contract has similar provisions to these.
*1025 The pertinent inquiry here is whether under the statute claimants were "unemployed" on the days when they had been laid off but received holiday pay. If so, they are entitled to unemployment compensation notwithstanding receipt of holiday pay. If not, any weekly benefit amount to which they would otherwise be entitled must be reduced in accordance with a prescribed formula by wages payable to them with respect to such week. R.S. 23:1593. Thus the definition of unemployment in R.S. 23:1472, its proper construction, and its application to the facts of this case is dispositive of this litigation.
Since wages as defined by R.S. 23:1472(20)(A) means all remuneration for services, including commissions and bonuses and the cash value of all remuneration in any medium other than cash, we are inclined to believe that holiday pay, like salary and other fringe benefits (together sometimes referred to as the "wage package"), comprises wages in this broad sense under the statute. That, however, does not end our inquiry. We must further construe the definition of unemployment in R.S. 23:1472(19). It encompasses, as we interpret it, any week during which an individual performs no services and with respect to which such week no remuneration for services performed that week is payable to him.
Admittedly, this construction of the statutory language is not the only reasonable one possible. Defendant contends, and not frivolously, that the language should be construed to mean that the individual is unemployed who performs no services in a given week and receives in that week (or ascribable to that week) no remuneration for services whenever performed.
Because either construction of the statutory language seems equally plausible, we hold that this portion of the statute is ambiguous. The Louisiana Employment Security law is remedial social legislation. It is to be construed liberally and in the interest of the statute's beneficiaries. National Gypsum Company v. Administrator, 313 So.2d 230 (La.1975); Lambert v. Brown, 169 So.2d 4 (La.App. 2nd Cir. 1964). For this reason we resolve the ambiguity by construing the statute as contended by the claimants, that is, that to be unemployed there must be no remuneration for services performed that week.
Applying the construction we have chosen, we must determine whether these claimants received remuneration for services which were performed the week ending December 28, 1974. We conclude that the holiday pay was not remuneration for services performed on the holidays or during the week when the holidays fell. Bearing heavily upon our conclusion is the fact that were claimants to have in fact performed services on the prescribed holidays, because scheduled to work or otherwise, they would have received, in addition to the holiday pay, time and one-half pay for each hour worked. It is thus apparent that they received holiday pay not in relation to services performed that day, nor that week, but rather as a fringe benefit of their employment simply by virtue of being a company employee during the contract period and meeting the contract eligibility requirements referred to hereinabove. Their holiday pay was a fringe benefit just like insurance or annuities, retirement, sickness or accident disability, medical and hospitalization expenses which, incidentally, are specifically excluded from wages by R.S. 23:1472(20)(C).[3]
*1026 The noninclusion of holiday pay in R.S. 23:1472(20)(C) neither helps nor hinders claimants in their legal position. The sole inquiry as we see it is not whether the legislature has said holiday pay is or is not included in wages but rather, in the absence of a legislative expression, whether this Court should construe holiday pay as described in this contract as remuneration for services performed during the week in question.
Defendants argue that the contractual requirements for eligibility for holiday pay indicate the holiday pay is remuneration for the services impliedly stated therein. They point out that, under the relevant contractual provisions, to be eligible for holiday pay an employee must have been on the payroll for thirty days or more and must have worked his scheduled work day immediately before and immediately following the holiday unless absent for a justifiable cause and must have worked on the holiday if scheduled to work unless absent for justifiable cause. They cite Geremia v. Administrator, Unemployment Comp. Act, 146 Conn. 264,150 A.2d 203 (1959) in support of the contention that the employee helps maintain continuity of production by working on the day before and the day after the holiday and that such is a condition to receipt of the holiday pay. Of course in this case plaintiffs did not work on the holiday) nor on the day before or after the holiday(s). Rather they were absent for apparently justifiable cause (lay-off) and were not paid for any of those days. In any event, were they to have worked the day before and after, the pay, if ascribable to the day before, day after service, would not have been for services performed on the holiday. Furthermore were we to consider the contractual requirements controlling, the pay would still not be exclusively for services performed in the same week, i. e., the day before and the day after, and/or several days during the week and before the holiday(s). At best it might be said that the holiday pay was partially to remunerate the employee for day before/day after and pre-holiday employment of not less than thirty days. Even under this construction, one most favorable to defendants, the holiday pay would only have been partially for work during the week of the holiday.
Actually we believe the better construction to be and we now hold that holiday pay is a fringe benefit of employment not ascribable to services performed on the holiday or the week of the holiday or any other specific calendar period.
One of the more serious arguments put forth by defendants is that there should be no double payment of unemployment compensation and holiday pay for the same period because they should not be paying a payroll tax on holiday pay while suffering for the holiday an experience rating disadvantage prompted by payment of unemployment compensation benefits.[4] In this regard, they say they have paid the payroll tax on the holiday pay. They argue, and not implausibly, that it is unfair to hold that holiday pay is wages for purposes of the tax but is not wages for purposes of deduction against compensation benefits. Our answer to defendant's position is that we have not held and do not here hold that holiday pay is wages for purpose of the tax.[5]
*1027 Defendants also rely heavily upon cases in the national jurisprudence favorable to their position that holiday pay constitutes wages. General Motors Corp. v. Michigan Unemployment Comp. Com'n, 331 Mich. 303, 49 N.W.2d 305 (1951); Erickson v. General Motors Corp., 177 Kan. 90, 276 P.2d 376 (1954); In the Matter of the Employees of the Weyerhaeuser Timber Co., 53 Wash.2d 235, 332 P.2d 947 (Wash.1958); Geremia v. Administrator, Unemployment Comp. Act, supra; Moore v. State of Delaware Unemployment Comp. Com'n, 3 Storey 209, 167 A.2d 76 (Del.1961); Autwell v. State Dept. of Industrial Relations, 47 Ala.App. 8, 249 So.2d 625 (Ala.Civ.App.1971).
This line of cases stems from General Motors Corporation v. Michigan Unemployment Compensation Commission, supra, a 1951 decision of the Michigan Supreme Court with which we are not in agreement. There is incidentally a contrary decision by the New York Supreme Court, Appellate Division in Roman v. Catherwood, 25 A.D.2d 580, 266 N.Y.S.2d 907 (1966).[6]
In any event we are not bound by the Michigan case and its progeny. And in fact we come to a different result as we construe our statute and the facts of this case.

Decree
For the foregoing reasons the judgment of the Court of Appeal is reversed. The judgment of the district court favorable to plaintiffs, reversing the decisions of the Louisiana Board of Review of the Louisiana Department of Employment Security dated respectively May 23, 1975, September 26, 1975 and December 19, 1975 and ordering payment to plaintiff-claimants of unemployment compensation benefits is reinstated. The case is remanded to the Board of Review for further proceedings in accordance with our decision; costs to be borne by defendants.

REVERSED AND REMANDED.
* * *
SANDERS, C. J., dissents with written reasons.
SUMMER, J., dissents.
SANDERS, Chief Justice (dissenting).
The sole issue presented here is whether holiday pay is wages and thus deductible from unemployment benefits under LSA-R.S. 23:1471, the Louisiana Employment Security Law.
The Court of Appeal held that holiday pay is wages. See Parker v. Gerace, La. App., 346 So.2d 853 (1977). I agree.
LSA-R.S. 23:1593 provides in pertinent part:
"An eligible individual who is employed in any week shall be paid with respect to such week a benefit equal to his weekly benefit amount less that part of his wages, if any, payable to him with respect to such week in excess of fifty percent of his current weekly benefit amount." [Emphasis added.]
LSA-R.S. 23:1472 defines unemployment and wages as follows:
"(19) `Unemployment'Any individual shall be deemed to be `unemployed' in any week during which he performs no services and with respect to which no wages are payable to him, or in any week of less than full-time work if the wages payable to him with respect to such week are less than his weekly benefit amount.
"(20)(A) `Wages' means all remuneration for services, including commissions and bonuses and the cash value of all remuneration in any medium other than cash." [Emphasis added.]
The relevant contractual provisions between the employer and the employees provide:
"For each recognized holiday an eligible employee shall receive eight (8) hours' pay at the straight time rate of the job on which he worked on his last working *1028 day before the holiday. If such employee works on the holiday, he shall receive additional compensation as provided in Section XIV`Overtime'.
"In order to be eligible for holiday pay, an employee must meet all of the following conditions:
"1. He must have been on the payroll of the Company for a period not less than thirty (30) days immediately preceding the holiday.
"2. He must have worked his scheduled work day immediately before and immediately following the holiday unless absent for a justifiable cause.
"3. He must have worked on the holiday if scheduled to work unless absent for justifiable cause.
"An employee will be considered absent for justifiable cause:
"1. If he is on vacation; or,
"2. If he is unable to work because of illness or injury, which must be proven by evidence satisfactory to the Company, and the holiday falls within the first six (6) months of such absence; or,
"3. If he has been excused by his supervisor."
During the period that relators were on temporary lay-off, their employer paid them for the Easter, Memorial Day, and Christmas holidays in accordance with the union contract. Consequently, the employer deducted the amounts paid for the holidays from the unemployment benefits owed the employees. The employees contend that the deduction for the holiday pay received was improper. They argue that because they performed no services on the holidays, the money received was not wages and thus should not have been deducted from their unemployment benefits. Alternatively, they argue that even if the holiday pay is considered wages, these "wages" are statutorily excepted under LSA-R.S. 23:1472(20)(C).[1]
LSA-R.S. 23:1472(20)(C) exempts certain enumerated benefits from the definition of wages which would otherwise be deductible from unemployment benefits. Among those benefits specified are insurance, annuity, retirement, sickness or accident disability payments made by the employer. However, holiday pay is not included among the exceptions. Moreover, to be eligible for holiday pay under the contract here, the employee must have worked the preceding day and on the holiday if scheduled to do so, unless absent for justifiable cause.
Relators' primary argument, that holiday pay is not wages because frequently no actual work is performed on those days, has been rejected in other jurisdictions. My research discloses that the unemployment compensation acts in those states are almost identical to our own. Moore v. State of Delaware Unemploy. Comp. Com'n, 3 Storey 209, 167 A.2d 76 (1961); Geremia v. Administrator, Unemployment Comp. Act, 146 Conn. 264, 150 A.2d 203 (1959); Weyerhaeuser Timber Co. v. State Unemp. Comp. *1029 Com'n, 217 Or. 378, 342 P.2d 114 (1959); Di Micele v. General Motors Corp., 29 N.J. 427, 149 A.2d 223 (1959); In Re Weyerhaeuser Timber Company, 53 Wash.2d 235, 332 P.2d 947 (Wash.1958); General Motors Corp. v. Michigan Unemploy. C. Com'n, 331 Mich. 303, 49 N.W.2d 305 (1951); Draus v. Board of Review, 13 N.J.Super. 231, 80 A.2d 316 (1951).[2]
Our state statute defines wages as "all remuneration for services, including commissions and bonuses and the cash value of all remuneration in any medium other than cash."
The state statutes upon which the courts of other jurisdictions have based their conclusion that holiday pay is wages contain almost identical language. Those statutes define wages as meaning "all remuneration for services [or in some instances, for personal services], including commissions and bonuses and the cash value of all remuneration in any medium other than cash."
In Di Micele v. General Motors Corp., supra, where the state statute defined wages identically, the New Jersey Supreme Court held that holiday pay is wages. In refuting the same argument advanced here, that court stated:
"But the argument is not well premised, and it begs the question. The meaning of a statute, clear and explicit in terms, cannot be enlarged or modified to accord with what might in popular view be deemed to be a more politic contrivance. The making of law, it has been said, is an exercise of the will of the state; the judicial function is an exercise of the reason of the judge in the interpretation and application of the law, to fulfill the intention of the lawmaker."
In Geremia v. Administrator, Unemployment Comp. Act, supra, the Connecticut Supreme Court of Errors, controlled by both statutory and contractual language identical to that before us, reasoned:
"The Unemployment Compensation Act defines `wages' as `all remuneration for employment,' and `employment' as `any service * * * performed under any * * * contract of hire creating the relationship of employer and employee.' Rev.1958, § 31-222(a)(1), (b). `Wages' must, therefore, be taken to mean all remuneration for any service performed in the course of an employeremployee relationship. Here the employees who received holiday pay performed a service for their employers, first, in helping maintain continuity of production by working on the day before and the day after the holiday. It was apparently important to the employers that this service be rendered, otherwise there would be no reason for incorporating the requirement as a condition of the receipt of holiday pay. Again, the employees who received holiday pay performed another service for their employers in holding themselves ready for work on the holiday, if the employers required work to be done on that day. Readiness to serve may be hired, quite as much as service itself. Armour & Co. v. Wantock, 323 U.S. 126, 133, 65 S.Ct. 165, 89 L.Ed. 118. Wages are no less earned when the employee holds himself in readiness to perform than when he actually performs. General Motors Corporation v. Michigan Unemployment Compensation Commission, 331 Mich. 303, 312, 49 N.W.2d 305. Here one of the services required of the employees, in return for payment to them of holiday pay, was that they hold themselves in readiness to work on the holiday; having done so, they earned their right to holiday pay to the same extent as they earned their right to be paid wages for any other service performed for their employers pursuant to the employers' direction. The holiday pay received by the plaintiffs was a payment of wages for the service they were required to render *1030 and did render to their employers in order to qualify for holiday pay under the provisions of the contracts. It was not a payment of compensation for loss of wages.

"Under the collective bargaining agreements, the employers were obligated to pay, and the employees were entitled to receive, wages or remuneration for services performed by the employees. For their regular wages, the service which the plaintiffs were obligated to perform consisted of production work at the times required by the agreements. For their holiday pay, the service which the plaintiffs were obligated to perform, pursuant to the provisions of the same agreements, consisted of helping to maintain continuity of production by working on the day before and the day after the holiday, and in addition, holding themselves in readiness to work on the holiday if called upon to do so. Both regular pay for production service and holiday pay for the service required as a condition of receiving holiday pay were wages or remuneration earned by the employees for services rendered. They were similar in character so far as they represented payment by the employers of remuneration earned by the employees pursuant to the provisions of their employment agreements. The agreement in the case of the plaintiff Geremia gives express recognition to this fact in the provision dealing with the computation of vacation pay. It is there provided: `In computing an employee's average work week and average straight time hourly rate for purposes of vacation pay, the Company will include the hours paid for and the pay received under the holiday pay provisions of the Contract.' In other jurisdictions where a similar question has been presented under contracts containing like provisions, holiday pay has been uniformly held to be remuneration for services rendered to the employer. General Motors Corporation v. Michigan Unemployment Compensation Commission, supra, 331 Mich. 309, 49 N.W.2d 307; In re Weyerhaeuser Timber Co., Wash. [53 Wash.2d 235], 332 P.2d 947, 949; Erickson v. General Motors Corporation, 177 Kan. 90, 98, 276 P.2d 376; Hill v. Review Board, 124 Ind.App. 83, 87, 112 N.E.2d 218." [Emphasis added.]
In support of their position, relators cite the judgment of the Court of Appeal in American Sugar Company v. Brown, La. App., 193 So.2d 326 (4th Cir. 1967), cert, denied, 250 La. 263, 195 So.2d 145 (1967). That case dealt with the question of whether vacation pay is wages and thus deductible from unemployment compensation. The Court of Appeal held that it was. That case, of course, is distinguishable, and relators' reliance upon it is misplaced. Moreover, consistent with this dissent, the Court of Appeal stated:
"Holiday pay constitutes `wages' for unemployment payment purposes. Erickson v. General Motors Corp., Buick-Oldsmobile-Pontiac Division, Kansas City, 177 Kan. 90, 276 P.2d 376, 380."
The majority also cites Roman v. Catherwood, 25 A.D.2d 580, 266 N.Y.S.2d 907 (1966). This is a decision of the Appellate Division of the New York state court of general trial jurisdiction. The question presented here was not raised nor considered in that case. The court held only that a week in which an employee did not report to duty but received one day holiday pay was not a "week of employment" within the Labor Law provision defining that term as a week in which the claimant did some work in employment for an employer. The decision has no persuasive force here.
Consistent with the uniform jurisprudence of courts faced with this question, I conclude that the judgment of the Court of Appeal is correct and would affirm that judgment.
For the reasons assigned, I respectfully dissent.
NOTES
[1] See R.S. 23:1531-1542.
[2] While the controversy arose concerning December 24th, 25th and 26th, 1974 and the week ending December 28, 1974, the litigation now also apparently involves the holidays March 30, 1975 (Easter) and May 26, 1975 (Memorial Day). What if any periods of unemployment preceded or succeeded these latter holidays is not apparent from the record.
[3] R.S. 23:1472(20)(C) provides that:

"(C) The term `wages' shall not include;
(1) The amount of any payment made to or on behalf of an individual in its employ under a plan or system established by an employing unit which makes provision for individuals in its employ generally or for a class or classes of individuals, including any amount paid by an employing unit for insurance or annuities, or into a fund to provide for any such payment, on account of retirement, or sickness or accident disability, or medical and hospitalization expenses in connection with sickness or accident disability, or death, provided the individual in its employ
(a) has not the option to receive, instead of provision for such death benefit, any part of such payment or, if such death benefit is insured, any part of the premiums (or contributions to premiums) paid by his employing unit, and
(b) has not the right under the provisions of the plan or system or policy of insurance providing for such death benefit, to assign such benefit, or to receive a cash consideration in lieu of such benefit either upon his withdrawal from the plan or system providing for such benefit or upon termination of such plan or system or policy of insurance or of his services with such employing unit;
(II) The payment by an employing unit (without deduction from the remuneration of the individual in its employ) of the tax imposed upon a worker under Section 1400 of the United States Internal Revenue Code.
(III) Dismissal payments which the employing unit is not legally required to make."
[4] See R.S. 23:1531, 1532 and 1533.
[5] While we do not have to decide that specific issue in this case, it would seem that holiday pay, as we here construe it, is no more wages for purposes of payroll tax than are the fringe benefits described in R.S. 23:1472(20)(C).
[6] There the Court found unfavorably to the claimant but analogously favorable to claimants here that holiday pay was not wages. The claimant in that case was arguing that holiday pay of Christmas week was wages in order to make forty weeks of employment for unemployment compensation eligibility.
[1] LSA-R.S. 23:1472(C) provides that:

"(C) The term `wages' shall not include;
"(I) The amount of any payment made to or on behalf of an individual in its employ under a plan or system established by an employing unit which makes provision for individuals in its employ generally or for a class or classes of individuals, including any amount paid by an employing unit for insurance or annuities, or into a fund to provide for any such payment, on account of retirement, or sickness or accident disability, or medical and hospitalization expenses in connection with sickness or accident disability, or death, provided the individual in its employ
"(a) has not the option to receive, instead of provision for such death benefit, any part of such payment or, if such death benefit is insured, any part of the premiums (or contributions to premiums) paid by his employing unit, and
"(b) has not the right under the provisions of the plan or system or policy of insurance providing for such death benefit, to assign such benefit, or to receive a cash consideration in lieu of such benefit either upon his withdrawal from the plan or system providing for such benefit or upon termination of such plan or system or policy of insurance or of his services with such employing unit;
"(II) The payment by an employing unit (without deduction from the remuneration of the individual in its employ) of the tax imposed upon a worker under Section 1400 of the United States Internal Revenue Code.
"(III) Dismissal payments which the employing unit is not legally required to make."
[2] Subsequent to Moore v. State of Delaware Unemploy. Comp. Com'n, supra, the Delaware Legislature amended the statute to specifically exclude holiday pay from the definition of wages. Hence, based upon this specific legislation, the Delaware Supreme Court later held that holiday pay is not wages. See General Motors Corporation v. Crishock, 287 A.2d 648 (Del.1972).